UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHLEEN BAILLO,

                Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security[1],

                Defendant.

CASE NO. C16-5818-RAJ-MAT

REPORT AND RECOMMENDATION RE: SOCIAL SECURITY DISABILITY APPEAL

    Plaintiff Kathleen Baillo proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be AFFIRMED.

/ / /

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Carolyn W. Colvin as defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

REPORT AND RECOMMENDATION
PAGE - 1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1977.[2] She completed high school and previously worked as a payroll clerk, accounting clerk, and legal secretary. (AR 252 and AR 27.)

Plaintiff filed DIB and SSI applications in June 2012, alleging disability beginning September 15, 2010. (AR 214-25.) Her applications were denied initially and on reconsideration.

On January 30, 2015, ALJ Vadim Mozyrsky held a hearing, taking testimony from plaintiff and a vocational expert (VE). (AR 35-71.) On March 13, 2015, the ALJ issued a decision finding plaintiff not disabled. (AR 18-29.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on July 22, 2016 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's fibromyalgia, asthma, degenerative disc disease, obesity, anxiety, depression, ADHS, borderline personality disorder, panic disorder, and migraine headaches. Step three asks whether a claimant's

---

[2] Plaintiff's date of birth is redacted back to the year in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files.

impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform less than a full range of light work, with the following limitations: lift and carry twenty pounds occasionally and ten pounds frequently; sit for six hours and stand and walk six hours out of an eight-hour workday; push and pull as much as she can lift and carry; occasionally climb ramps, stairs, ladders, and scaffolds; frequently balance, kneel, crouch, and crawl; occasionally stoop; precluded from working at unprotected heights or around heavy operating machinery and cannot operate a motor vehicle as part of the day-to-day job; avoid concentrated exposure to airborne irritants, such as dusts, gases, and odors; precluded from working with machinery causing vibrations; limited to simple, routine, and repetitive tasks, and to simple work-related decisions; can occasionally interact with coworkers and cannot interact with the public. With that assessment, the ALJ found plaintiff unable to perform her past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as work as a mail room clerk, office helper, and pricer.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d

REPORT AND RECOMMENDATION
PAGE - 3

1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in rejecting the opinions of two consultative examiners. She requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Medical Opinions

Plaintiff avers error in the ALJ's consideration of medical opinions proffered by consultative examiners Dr. Scott Alvord and Dr. Suzanna Hahn. As an examining psychologist and physician, the opinions of Drs. Alvord and Hahn were, as a general matter, entitled to more weight than the contradictory opinions of non-examining State agency consultants. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Given the existence of the contradictory opinions, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, for rejecting the opinions of Drs. Alvord and Hahn. *Id*. at 830-31 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A. <u>Dr. Scott Alvord</u>

Dr. Alvord examined plaintiff in October 2012. (AR 322-26.) Dr. Alvord assessed plaintiff's adaptive functioning as falling in the moderate to severe range of impairment, observed that she was receiving treatment in the form of medications and therapy but remained quite

REPORT AND RECOMMENDATION
PAGE - 4

symptomatic, found her ability to function in an occupational setting at that time "quite limited given emotional lability and anxiety issues[,]" and recommended she be monitored closely for increasing suicidal ideation. (AR 326.) He assessed a Global Assessment of Functioning (GAF) score of 35-40, describing "[s]ome impairment in reality testing or communication" or "major impairment in several areas." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (DSM-IV-TR). *But see* DSM-V at 16-17 (5th ed. 2013) (the most recent version of the DSM does not include a GAF rating for assessment of mental disorders).

The ALJ gave some weight to Dr. Alvord's assessment, but did not find moderate impairment in daily activities given plaintiff's ability to care for her two children. (AR 25.) He gave little weight to the GAF assessment as Dr. Alvord "provided no basis for it." (AR 25-26.) The ALJ further stated: "In terms of adaptive functioning and ability to function in an occupational setting, while the claimant is limited in her ability to work, evidence does not suggest debilitating mental symptoms. Records reflect good response to treatment." (*Id.*) Contrary to plaintiff's contentions, and for the reasons outlined below, the Court finds substantial evidence support for the ALJ's assessment of the opinions of Dr. Alvord.

An ALJ may reject a physician's opinion based on inconsistency with a claimant's level of activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's finding of inconsistency between physician's opinion claimant could not engage in any of a number of postural activities and should never be exposed to various environmental conditions, and the level of activity she "engaged in by maintaining a household and raising two young children, with no significant assistance from her ex husband.") As the ALJ in this case observed, plaintiff "has been able to care for her children while her husband works 2 jobs[,]" and "[a]though she testified her oldest child helps with cooking and other tasks, her children were much younger [(two and seven

REPORT AND RECOMMENDATION
PAGE - 5

years old at the alleged onset date and six and eleven years old at the hearing)] when she alleges she became disabled." (AR 25, 43-44.) (*See also* AR 24 (noting plaintiff's November 2012 report of "a lot of stress in the home with a 3-year old child and a bipolar 9 year-old and no relatives or babysitter to help out.") (citing AR 438).)

Plaintiff denies her care for her children undermined Dr. Alvord's opinion, pointing to*, inter alia*, her April 2012 report of stress due to her daughter's diagnosis of "adhd/bipolar" and December 2012 report that she was "[a]ble to take care of kids as best she can." (AR 347, 461.) However, even if plaintiff's interpretation of the evidence is rational, she fails to demonstrate the ALJ's contrary interpretation is not at least equally rational. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (when evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ); *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") Also, to the extent plaintiff relies on her own subjective symptom reporting, she does not demonstrate or even challenge the ALJ's decision to discount her testimony. *See infra* at 8. The ALJ's reliance on inconsistency with plaintiff's level of activity served as a specific and legitimate reason for rejecting the opinion evidence.

In challenging the ALJ's rejection of the GAF assessment, plaintiff asserts that the "rest of the report, including the diagnostic impression and social stressors all factor into the assessment of major impairment." (Dkt. 14 at 5.) The ALJ, however, accurately noted Dr. Alvord did not specify a basis for the GAF score. (*See* AR 326.) While the Social Security Administration continues to receive and consider GAF scores from acceptable medical sources as opinion evidence, a GAF score cannot alone be used to "raise" or "lower" someone's level of function,

and, unless the reasons behind the rating and the applicable time period are clearly explained, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Administrative Message 13066 ("AM-13066"). The ALJ reasonably assigned little weight to the unexplained GAF assessment. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). *See also Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."), and DSM-IV-TR at 32-33 (a GAF score is based on either an individual's symptoms or her functional impairments, whichever is lower).

An ALJ may also discount a medical opinion based on inconsistency with the medical evidence. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Plaintiff contends the ALJ's conclusion that the evidence did not suggest debilitating mental symptoms is conclusory, and points to treatment notes supporting her allegations of pain and emotional dysregulation, and the intersection of her emotional distress and physical problems. (*See* Dkt. 14 at 6.) She asserts an absence of support for the ALJ's conclusion that the records reflected good response to treatment, denies any evidence of sustained improvement, and points to her treating mental health provider's observation that the intensity of her symptoms varies and can change week to week (*see* AR 778).

The ALJ cited to records supporting his interpretation, including an April 2013 mental health intake assessment in which plaintiff was assessed a GAF of 62, reflecting moderate symptoms or moderate difficulty in social, occupational, or school functioning, DSM-IV-TR at 34, and plaintiff's July 2014 report of relief from depression with counseling. (AR 26 (citing AR 555, 771).) He further noted plaintiff's numerous medication trials, her daily use of valium, use

REPORT AND RECOMMENDATION
PAGE - 7

of medical marijuana, and her treatment for an overdose after she took seven valium to help her sleep. (*Id.* (citing AR 555, 676).)

The ALJ also, earlier in the decision, provided specific, clear, and convincing reasons for not fully accepting plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms as a general matter, and found her testimony undermined by inconsistencies on examination, inconsistencies in her reported daily activities, and her failure to consistently comply with recommended treatment. (AR 23.) Plaintiff, for example, stopped working because her family moved to California to take care of her in-laws, not due to her impairments. While alleging disability beginning September 2010, there were no treatment records until August 2011, and subsequent records reflected few complaints of fibromyalgia pain until April 2012. In April 2012, plaintiff was noted to have walked into a clinic "almost waddling in pain, but she walked out with absolutely no difficulty."; she tested positive for Oxymorphone in July 2012, after being advised against chronic opiate therapy given the absence of evidence of effectiveness in fibromyalgia, her chronic benzodiazepine use, daily use of marijuana, and her history of substance abuse; in November 2012, "somatoform disorder with some element of secondary gain" was suspected and her "[s]tory changed as the exam/interview proceeded[,]" but there was no diagnosis of somatoform disorder established; and, in July 2014, plaintiff "walked into the clinic but when seen for examination, she was lying on the exam table and sleeping[,]" and, when she could not find a ride home, "she became remarkably more alert, walking and talking[,]" her "[m]entation was back to baseline and she insisted she could drive." (AR 23-24 (citations to record omitted).) The ALJ pointed to evidence of activities as reflecting a more active lifestyle than alleged, including, in addition to child care, a September 2012 report "she was on the computer a lot for 'the business'", and an October 2012 report of "exercising 120 minutes per week at a moderate to strenuous level."

REPORT AND RECOMMENDATION
PAGE - 8

(AR 25.)

The ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014); *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). Considering the record and decision as a whole, the Court finds the ALJ's conclusion regarding Dr. Alvord's opinion as to adaptive functioning and ability to function in an occupational setting to have the support of substantial evidence. It should be noted that, in reaching this conclusion, the ALJ acknowledged plaintiff was limited in her ability to work, but found the record to not support the conclusion her mental symptoms were debilitating. To the extent plaintiff offers a different, rational interpretation of the evidence, she does not demonstrate the ALJ's alternative interpretation was not rational. *See Tackett*, 180 F.3d at 1098, and *Morgan*, 169 F.3d at 599. The ALJ, for this reason and for the reasons stated above, provided sufficient reasons for affording only some weight to the opinions of Dr. Alvord.

B.  Dr. Suzanna Hahn

Dr. Hahn examined plaintiff in February 2014. (AR 504-15.) In a medical source statement containing her evaluation and examination results, Dr. Hahn assessed plaintiff as able to stand/walk three hours and sit for four hours in an eight-hour workday; lift twenty pounds occasionally and ten pounds frequently; occasionally climb, stoop, kneel, crouch, and crawl; frequently balance, reach, handle, finger, and feel; and with no limitations with regard to heights and heavy machinery, but limitations to extremes of temperatures, chemicals, dusts, fumes, gases, and excessive noise. (AR 509.) Dr. Hahn also completed a second form, with some differences and additions in her assessment as follows: able to continuously lift up to ten pounds and frequently lift up to twenty pounds; at one time, without interruption, able to sit for three hours, stand for one

hour, and walk for one hour; total in an eight-hour workday, able to sit for four hours, stand for three hours, and walk for three hours; can frequently operate foot controls with either foot; can never climb ladders or scaffolds; frequent exposure to unprotected heights, moving mechanical parts, and operating a motor vehicle, occasional exposure to humidity and wetness, dusts, odors, fumes, and pulmonary irritants, extreme cold and heat, and vibrations, and moderate exposure to noise. (AR 510-14.) (*See also* AR 515 (opining plaintiff is able to perform activities like shopping, travel without a companion, ambulate without a wheelchair, walker, or two canes or crutches, walk at a reasonable pace on rough or uneven surfaces, use public transportation, climb a few steps at a reasonable pace with use of a single hand rail, prepare a simple meal and feed herself, care for personal hygiene, and sort, handle, or use paper/files).)

The ALJ gave Dr. Hahn's opinion significant weight, but did not find plaintiff able to stand and walk only one hour at a time and did not find manipulative limitations. (AR 25.) He stated: "Although gait was slow and stiff at this exam, other records reflect no gait disturbance or muscle weakness." (*Id*. (citing AR 431-32 (October 2012), AR 519 (November 2014), AR 545 (August 2014), AR 614 (September 2013).) The ALJ noted Dr. Hahn provided no findings to support manipulative limitations or noise exposure limitations.

Plaintiff asserts the ALJ is not qualified to "reinterpret" Dr. Hahn's results and lacks the expertise to determine what objective findings are sufficient to support limitations assessed by a physician. (Dkt. 14 at 8.) She states that problems beyond gait or muscle weakness could affect her ability to stand and walk, and points to objective findings supporting the limitation in her abilities due to chronic pain. (*Id*. (citing records documenting tenderness and tender points, inability to complete an exam due to discomfort, weakness and dysfunction of core, absence of proper muscle tone, and slow, stiff, narrow-based gait).) Plaintiff argues the ALJ improperly

REPORT AND RECOMMENDATION
PAGE - 10

cherry-picked a few records to discredit the opinion of an examining doctor.

Plaintiff further notes that the ALJ did not give a specific reason for discounting Dr. Hahn's opinion regarding a three hour standing/walking limit, only addressing the one-hour at a time limit, and gave no reason for discounting the limitation on sitting. She asserts that, were Dr. Hahn's limitations adopted, she would be unable to complete a full workday and would be found disabled. Again, however, the Court finds no error in the ALJ's consideration of the opinion evidence.

The ALJ appropriately discounted the assessment of manipulative and noise exposure limitations given Dr. Hahn's failure to provide any findings in support. *Thomas*, 278 F.3d at 957 (ALJ need not accept opinion of any physician if "brief, conclusory, and inadequately supported by clinical findings."). The ALJ also reasonably rejected a one-hour standing/walking limitation. As the Commissioner observes, in addition to the ALJ's citations, the record contains plaintiff's reports of walking fifteen to thirty minutes per day, five days per week, and findings on examination of full range of motion, objective findings within normal limits, an absence of tenderness, and normal strength and gait. (*See* Dkt. 15 at 6-7 (citations to record omitted).) The record also includes multiple observations of inconsistencies in plaintiff's presentation and other notable observations. (*See*, *e.g.*, AR 347 ("Some interesting observations – walking into clinic she was almost wadding in pain, but walked out with absolutely no difficulty"), AR 442 ("Physical examination has not always been consistent with patient's subjective description of pain level (ie walking into clinic barely able to move, walking out without any signs of difficulty)"), AR 444 ("Patient winced dramatically but not consistently with touch/palpation."), AR 448 (noting patient "in fact, jumps before I even touch her", that physician suspected somatoform disorder with some element of secondary gain, and that her "[s]tory changes as exam/interview proceed."), AR 561 (claimant drove to clinic with her two children and walked into clinic, but subsequently laid down

on the examination table and denied overmedication; "1/2 hr later when can not find others to drive remarkably more alert / walking / talking and insists able to drive. Mentation back to baseline. . . . Comment: somatization vs overmedication. Suspect the first[.]")) Dr. Hahn also noted plaintiff "walks to the exam room without difficulties." (AR 506.)

The ALJ did not improperly re-interpret medical results, play doctor, or cherry-pick evidence. The ALJ undertook his proper role to assess the medical evidence and resolve any conflicts or ambiguities in the record, *Treichler*, 775 F.3d at 1098; *Carmickle*, 533 F.3d at 1164, and reasonably discounted a medical opinion based on inconsistency with other medical evidence, *Tommasetti*, 533 F.3d at 1041. *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's opinion due to discrepancy or contradiction between opinion and the physician's own notes or observations is "a permissible determination within the ALJ's province.")

Plaintiff also fails to demonstrate error in relation to Dr. Hahn's other opinions of limitations in standing and walking. Dr. Hahn, as described above and in the ALJ's decision, produced two documents outlining her opinions as to plaintiff's functional limitations. As the Commissioner observes, the first document identifying a limitation to a "Maximum standing/walking capacity: Three hours in an eight-hour day" (AR 509), could be construed in two ways. That is, it could mean plaintiff could stand for three hours total *and* walk for three hours total, for a combined total of six hours in an eight-hour workday, or it could indicate an ability to stand *or* walk for a combined total of three hours. However, the second form completed by Dr. Hahn clearly supports the former interpretation by separately indicating an ability to stand for a total of three hours, walk for a total of three hours, and sit for a total of four hours, and leaving blank a subsequent question asking: "If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?"

REPORT AND RECOMMENDATION
PAGE - 12

(AR 511.) The ALJ adopted standing and walking limitations entirely consistent with this opinion by including in the RFC a finding that plaintiff could "stand and walk 6 hours out of an 8-hour day." (AR 22.) Having done so, the ALJ was not obligated to provide reasoning in relation to Dr. Hahn's assessment. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (ALJ need not provide reason for rejecting physician's opinions where ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC limitations "entirely consistent" with limitations assessed by physician).

The ALJ did not either reject or adopt Dr. Hahn's opinion plaintiff could sit for a total of four hours in an eight-hour workday, and assessed plaintiff as able to sit for a total of six hours. (AR 22, 509, 511.) The Court, however, does not find this omission to constitute reversible error.

An ALJ's error may, as a general matter, be deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'" *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id.* The party asserting error bears the burden of demonstrating "not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012).

In this case, the ALJ afforded significant weight to both Dr. Alvord's opinions and the opinions of non-examining State agency consultant Dr. Robert Hander, the latter of whom found plaintiff capable of sitting for about six hours in an eight-hour workday. (AR 107.) As asserted by the Commissioner, Dr. Hander's opinion provides support for the sitting limitation in the RFC.

Plaintiff, moreover, does not provide any support for a contention the omission of a four-hour sitting limitation affected her substantial rights. The ALJ, while including a six-hour sitting limitation in the RFC, assessed plaintiff as able to perform light work jobs and identified light

REPORT AND RECOMMENDATION
PAGE - 13

work positions at step five. (AR 22, 28.) Sedentary jobs generally include a total of no more than about two hours of standing or walking in an eight-hour workday and, consequently, require the ability to sit for some six hours a day. Social Security Ruling (SSR) 83-10. However, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday[,]" and does not, as such, require sitting in excess of two or so hours a day. *Id. See also* SSR 83-14 ("The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing or walking most of the workday."). There is no conflict between the RFC sitting limitation and the jobs identified at step five and no basis for a finding of harmful error.

## **CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED.

## **DEADLINE FOR OBJECTIONS**

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 26, 2017**.

DATED this 11th day of May, 2017.

Mary Alice Theiler
United States Magistrate Judge